**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **ORAL ARGUMENT REQUESTED** |
| Plaintiff, | **EVIDENTIARY HEARING REQUESTED** |
| v. | Case No. 6:24-cr-231-WWB-RMN |
| GIOVANNI ISAI RAMIREZ REYES, | |
| Defendant. | |

**MOTION FOR PRETRIAL DETERMINATION OF QUESTION OF LAW**
**AND, SEPARATELY, MOTION TO DISMISS INDICTMENT**

Defendant Giovanni Isai Ramirez Reyes ("Mr. Ramirez") moves the Court to make a pretrial determination as to whether the term "damages" in 18 U.S.C. § 844(i) incorporates the common-law background principle of *de minimis non curat lex* ("*de minimis*") as a matter of law. Fed. R. Crim P. 12(b)(1), 12(d). If the Court answers that question in the affirmative, Mr. Ramirez separately moves the Court to dismiss the Indictment based on the defense of *de minimis*, which the Court can "determine without a trial on the merits." Fed R. Crim P. 12(b)(1). Mr. Ramirez requests oral argument on both motions and, if necessary, an evidentiary hearing on the second motion.

**PRELIMINARY STATEMENT**

"If the 'heavy artillery' of the criminal law was once largely reserved for addressing obviously morally culpable behavior, today it's often applied to ensure behavior that, if deserving of censure at all, used to be addressed through less forceful means—parental or community mediation or civil penalties." Neil Gorsuch & Janie Nitze, Over Ruled: The Human Toll of Too Much Law 106 (2024). "[A]re criminal laws and longer sentences the

answer to every problem?" *Id.* at 113.  Unfortunately, the Government has not heeded Justice Gorsuch's admonitions.  This case is the unfortunate result.

Throwing flares during a soccer match has been a part of global soccer fandom for many years.[1]  The laws and regulations surrounding this practice vary by team, country, and culture.  But one thing is certain: flares have been, and continue to be, thrown at soccer matches around the world.  Enthusiastic fans use the flares to express support for their team and drum up enthusiasm from the crowd.  Depending on the circumstances, some of these fans may face consequences like a monetary fine or a ban from attending matches.  But it seems strange to imagine a world where throwing a flare results in a federal arson prosecution and a mandatory minimum sentence of seven years in prison—or at least it did, until now.

Mr. Ramirez is charged under the federal arson statute, 18 U.S.C. § 844(i), with one count of "maliciously damag[ing], by means of a fire, a building or property used in an activity affecting interstate or foreign commerce."  (Doc. 1.)  The "building or property" charged in the Indictment is Inter&Co Stadium (the "Stadium")—the 25,000-seat, 435,000-square-foot home of men's soccer team Orlando City SC ("Orlando City") and women's soccer team Orlando Pride.[2]  The extent of the damages alleged by the Government are two spots of surface-level discoloration on foldable aluminum bleachers

---

[1] *See, e.g.*, Elias Johnson, *Swedish police and football supporters: a relationship without future prospects?,* Minimax (May 28, 2019*),* ("Flares had been common on football arenas all over Europe for a long time, and first appeared in Sweden in the 90s.  It is seen by many football supporters as an important way to express their culture and support of their team. The use of flares and other pyrotechnics, such as smoke bombs, are prohibited on almost all stadiums in Europe, but are still used frequently in most countries."), https://www.minimaxsasse.se/reset/blog-post-title-four-n592a.

[2] See *About*, https://www.interco-stadium.com/about.

and two small spots of surface-level corrosion on the concrete floor slabs.  *See infra* at 5–7.  All of this so-called damage was in the "Supporters' Terrace"—a standing section intended for Orlando City's rowdiest home fans and registered supporters' groups.[3]

Mr. Ramirez requests that the Court determine, as a threshold matter of law, whether 18 U.S.C. § 844(i) is subject to the *de minimis* rule.  The answer should be yes.  "Damages" is a term of art that means "legally cognizable harm," and it therefore incorporates background principles like the *de minimis* rule.  The plain meaning of "damages" also supports this reading because to "damage" a thing requires loss in that thing's value or usefulness.  Finally, even if the statute did not affirmatively incorporate the *de minimis* rule, all statutes are interpreted consistently with the rule absent contrary indication.  *Wisc. Dep't of Rev. v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992).

If the Court agrees with Mr. Ramirez on this threshold question of statutory interpretation, then Mr. Ramirez separately moves to dismiss the Indictment.  Based on facts that are either stipulated or undisputed, the Government cannot show "damages" to the Stadium that rise above a *de minimis* threshold.

## LEGAL STANDARD

*Motion for Pretrial Determination*

Whether the *de minimis* rule applies to Section 844(i) is a pure question of legal statutory interpretation that does not require a trial on the merits, so it must be decided

---

[3] Orlando City's website describes the Supporters' Terrace, also known as the Supporters' Section or simply "The Wall," as "an unrelenting din of hellacious noise designed to turn the opposition into an unnerved mess and sink them into the earth." Simon Veness, *The Wall Effect: How Orlando's Supporters' Section Gives The Lions a Leg Up* (Apr. 12, 2017), https://www.orlandocitysc.com/news/wall-effect-how-orlandos-supporters-section-gives-lions-leg

as a threshold matter in this case.  *See* Fed. R. Crim P. 12(d) ("The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling."); Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits.").

<u>Motion to Dismiss Indictment</u>

Rule 12(b) generally permits resolution of any objection that the court can determine "without a trial on the merits."  See Fed. R. Crim. P. 12(b)(1).  The Supreme Court instructs that a "defense" under Rule 12(b)(1) may be resolved by motion "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."  *United States v. Covington*, 395 U.S. 57, 60 (1969).  Any salient facts relevant to the application of the *de minimis* rule to this case either are jointly stipulated by the parties or otherwise are not subject to dispute.  If the Court feels that it needs more factual development to decide the application of the *de minimis* defense, it has discretion to set an evidentiary hearing solely to determine the maximum extent of damages alleged by the Government, which Mr. Ramirez will not dispute for purposes of the hearing.  Rule 12(b)(1) motions can be decided pre-trial based on facts outside of the indictment where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts, and [3] the district court can determine from them that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."  *See United States v. Pope,* 613 F.3d 1255, 1260 (10th Cir. 2010) (Gorsuch, J.) (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir.1994)) (internal quotations omitted).

Moreover, both the Supreme Court and this Court agree that stipulated facts are relevant to a Rule 12(b)(1) motion.[4]  *See Serfass v. United States*, 420 U.S. 377, 379–81 (1975) (deciding a case where an indictment was dismissed on extraneous stipulated facts and holding that an appeal of the dismissal by the Government does not implicate the Double Jeopardy Clause); *United States v. Harkness*, 2007 WL 865855, at *2 (M.D. Fla. Mar. 21, 2007) (holding that it is "***permissible and even desirable*** in certain circumstances for the Court to examine the factual predicate of an indictment, particularly ***where material facts are undisputed***, in order for the Court to ascertain whether the elements of the criminal charge can be shown."  (emphasis added)).

<u>BACKGROUND</u>

**I.    It Is Undisputed That Two Lit Flares Were Thrown At The Stadium.**

On February 24, 2024, Orlando City played the opening home game of its 2024 season in the Stadium.  In the seventy-fifth minute of the match, two lit flares allegedly landed in section 23 of the Supporters' Terrace.  Both flares were extinguished in less than a minute.  No fire department response was requested, the match was not paused, and ultimately neither flare was recovered.  Nevertheless, for purposes of this Motion, Mr. Ramirez stipulates that he was the person who threw the two flares.

---

[4] Footnote 1 in *Serfass* specifically states, "The District Court concluded that petitioner's defense was properly raised by motion before trial and that although petitioner had not waived his right to trial by jury, his defense was properly to be determined by the court." *Id.* at 381 n.1.  The Eleventh Circuit has held that a motion to dismiss an indictment may not be based on stipulated facts, *United States v. Salman*, 378 F.3d 1266, 1268 n.4 (11th Cir. 2004), but *Salman* apparently did not consider *Serfass*, which was discussed in the *Salman* briefing only for appellate jurisdiction issues and not for the more fundamental procedural issue.  This Court must follow the Supreme Court's guidance on procedural rules over the Eleventh Circuit.  *See United States v. Tsarnaev*, 595 U.S. 302, 316 (2022) ("[L]ower courts cannot create prophylactic supervisory rules that circumvent or supplement legal standards set out in decisions of this Court.").

**II.**  **There Is No Dispute Concerning The Maximum Extent Of The Damages That The Government Alleges Were Caused By The Flares.**

For purposes of the pretrial motions, the parties ***jointly stipulate*** to the accuracy of photographs depicting the maximum extent of the "damages" alleged by the Government. (Doc. 31.)  Two of them are reproduced at the end of this Motion in **Appendix A**, with arrows added to clarify the site of the alleged damages.  All of the photos are attached as **Exhibit A** of these Motions and to the Joint Stipulation (Doc. 31). The photos show two areas in Section 23 of the Supporters' Terrace—one between spots 18 and 19 in Row D, and another between spots 13 and 14 in Row F.  In these areas, the photos depict some discoloration on aluminum bleachers and two areas of corrosion (about five inches in length and a quarter inch in depth) on the concrete slab below.

Undersigned counsel and counsel for the Government also performed a joint walkthrough of the Stadium on December 12, 2024, and observed the same sites of the alleged damages (Section 23, spots 18 and 19 in Row D, and spots 13 and 14 in Row F). Undersigned counsel photographed the alleged damages with measuring tape and rulers for perspective.  The photos are attached as **Exhibit B**.  All of the black discoloration from the Government's photographs is gone, as well as the white discoloration near spots 13 and 14 in Row F.  Undersigned counsel was informed by a representative of the Stadium that it had been pressure-washed away.  Two of the photos are reproduced at the conclusion of this Motion in **Appendix B,** also with red arrows for guidance.

In any event, for purposes of these motions, the parties ***jointly stipulate*** to the Government's prior photographs (Doc. 31) regardless of any damage that may have since washed away.  On the basis of these so-called "damages," Mr. Ramirez is charged with federal arson, which carries a mandatory minimum sentence of five years, plus an

6

enhancement for causing "personal injury," which raises the mandatory minimum to seven years.[5] 18 U.S.C. § 844(i).  He faces a maximum of forty years in prison.

**MOTION FOR PRETRIAL DETERMINATION**

**I.    The Court Should Make A Pretrial Determination That, As A Matter Of Law, 18 U.S.C. § 844(i) Incorporates The Principle Of *De Minimis Non Curat Lex*.**

Section 844(i) is triggered when one "maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  Mr. Ramirez is charged with "maliciously damag[ing]" the Stadium "by means of a fire," *i.e.*, the two lit flares.  (Doc. 1.)  The Court should hold that, as a matter of law, the *de minimis* rule applies to Section 844(i) because: (1) "damages" is a term of art that incorporates common law principles like the *de minimis* rule; (2) the ordinary meaning of "damages" also supports the *de minimis* reading; and (3) the Supreme Court has held that the *de minimis* rule applies to all enactments absent contrary indication, and no such contrary indications exist in Section 844(i).

"Statutory interpretation starts, and ideally ends, with the text."  *Fuerst v. Hous. Auth. of City of Atlanta, Ga.*, 38 F.4th 860, 869 (11th Cir. 2022) (citation omitted).  "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  *Perrin v. United States*, 444 U.S. 37, 42 (1979).  That being said, "[p]art of a fair reading of statutory

---

[5] A minor reportedly sustained what her mother described as "superficial" burns on her wrist.  The burns were treated with topical cream and did not require further medical intervention.  Regardless, Section 844(i) requires cognizable damage to property used in interstate commerce.  Personal injury alone does not suffice to support the offense.

text is recognizing that 'Congress legislates against the backdrop' of certain unexpressed presumptions." *Bond v. United States*, 572 U.S. 844, 857 (2014) (citation omitted).

A well-settled background presumption of textual interpretation is that "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). Thus, "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

"Damages," which is not defined in Section 844(i), is a legal term of art. The Supreme Court interprets "damage" to mean "***legally cognizable harm***" in cases where using a dictionary definition would "explod[e]" liability "beyond what any legal system in the world allows."[6] *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 222–24 (1996) (emphasis added) (rejecting dictionary definitions of "damage" in a unanimous opinion written by Justice Scalia when interpreting text of treaty and defining "damage" to mean "legally cognizable harm"). As Justice Scalia wrote, where "the dictionary meaning of the term . . . embraces harms that no legal system would compensate, it must be acknowledged that the term is to be understood in its distinctively *legal* sense—that is, to mean only legally cognizable harm." *Id.* at 222. To determine what constitutes "legally

---

[6] The Court in *Zicherman* used the English "damage" and the French "*dommage*" interchangeably, but the terms are synonymous. Indeed, the English term comes from the French term. *Damage*, Black's Law Dictionary (12th ed. 2024).

cognizable harm," one must refer to the law of the relevant jurisdiction as expressed by "adjudicating courts." *Id.* at 223–24.

It is well-settled that Anglo-American law limits "legally cognizable harm" through the rule of *de minimis non curat lex,* which translates to "the law cares not for trifles." *Wis. Dep't of Rev. v. William Wrigley, Jr.*, Co., 505 U.S. 214, 231 (1992). The basic meaning of the rule is that "the law will not resolve petty or unimportant disputes." Andrew Inesi, A *Theory of De Minimis and A Proposal for Its Application in Copyright*, 21 Berkeley Tech. L.J. 945, 948 (2006). By definition, a harm that is *de minimis* "cannot . . . warrant legal cognizance." *Teague v. Alexander*, 662 F.2d 79, 82 (D.C. Cir. 1981).

Even if the term "damages" were not used as a term of art in Section 844(i), its plain meaning also supports application of the *de minimis* rule. The verb "damage" means "[t]o do or cause damage to," or, stated differently, "to injure (a thing) **so as to lessen or destroy its value**." *Damage (verb)*, Oxford English Dictionary Online (Oxford Univ. Press)[7]; *see also Damage (noun)*, The American Heritage Dictionary (HarperCollins Publishers) ("Destruction or a **loss in value, usefulness or ability resulting from an action or event** (emphasis added)) [8]; *Damage (noun)*, Oxford English Dictionary Online (Oxford Univ. Press) ("Injury, harm; esp. physical injury to a thing, **such as impairs its value or usefulness**."[9] (emphasis added)). Minor harm that does not lessen the value or usefulness of property is not "damage." This definition is particularly apt for Section 844(i) because the statute also applies to those who "destroy" property. To "destroy"

---

[7] https://www.oed.com/dictionary/damage_v

[8] https://ahdictionary.com/word/search.html?q=damage.

[9] https://www.oed.com/dictionary/damage_n

means "[t]o damage (something) so thoroughly as to make unusable, unrepairable, or nonexistent." *Destroy*, Black's Law Dictionary (12th ed. 2024).  In other words, to destroy a thing means to completely eliminate its value or use, and to damage it means to lessen its value or use.  Without loss in value or usefulness, there is no damage or destruction.  Harm that does not result in loss of value or usefulness is, therefore, *de minimis.*  Indeed, the Eleventh Circuit has used this definition repeatedly.[10]  *See Landmark Am. Ins. Co. v. Moulton Properties, Inc.,* 440 F. App'x 788, 792 (11th Cir. 2011); *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1360 n.7 (11th Cir. 2022).

Finally, and most importantly, the Supreme Court has held that the *de minimis* rule "is part of the established background of legal principles against which ***all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept***." *Wisc. Dep't of Rev.*, 505 U.S. at 231 (emphasis added); *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2378 (2023) (Barrett, J., concurring) (listing *de minimis* as one of the "[b]ackground legal conventions" that "are part of [a] statute's text").  The *de minimis* rule applies even in cases where the plaintiff is a sovereign, including criminal

---

[10] Some dictionaries provide an alternate definition of "damage" that amounts to "any bad effect on something." *Damage*, Black's Law Dictionary (12th ed. 2024).  As explained below in Parts II and III, this is not the best reading of the term "damages" in Section 844(i) based on principles of federalism, legislative history, the common law of arson, and the rule of lenity.  Some cases also distinguish between the plural noun "damages," and the singular noun "damage."  They interpret the former to mean the monetary remedy for harm, and the latter to mean the harm itself.  For purposes of the *de minimis* rule, this distinction does not matter.  The rule applies both to "damage" as a substantive element of a charge and to "damages" as a remedy.  *See* Max L. Veech & Charles R. Moon*, De Minimis Non Curat Lex*, 45 Mich. L. Rev. 537, 543–44, 560-61 (1947) (explaining that the rule is "not a mere rule of damages" but rather "an interpretive tool to inject reason into technical rules of law and to round-off the sharp corners of our legal structure," and further explaining that the *de minimis* doctrine is used "as an aid in establishing or denying a right of action in the first instance," and not "solely as a rule of damages").

cases.[11]   *See Indus. Ass'n of San Francisco v. United States*, 268 U.S. 64, 84 (1925) (applying rule in case where the Government sought only injunctive relief and holding that a conspiracy to restrain trade affecting, at most, a few thousand dollars, was *de minimis* when compared to economic activity of over $100,000,000); *Alabama v. Bozeman*, 533 U.S. 146, 154–56 (2001) (analyzing *de minimis* rule in a criminal case, holding that a prisoner's one-day return to his original place of imprisonment was not a *de minimis* violation of an Interstate Agreement on Detainers, and mandating dismissal of case in the receiving state); *United States v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005) (concluding that delay caused by a traffic stop was *de minimis* under Fourth Amendment); *United States v. Hocking Valley R. Co.*, 194 F. 234, 250 (N.D. Ohio 1911) (explaining that "[c]riminal law, as well as civil, honors the maxim"), *aff'd*, 210 F. 735 (6th Cir. 1914).

Section 844(i)'s text affirmatively demonstrates that the statute is subject to the *de minimis* rule.  The statute applies to anyone who "maliciously damages. . . by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." Section 844(i) affirmatively incorporates the *de minimis* rule through the term "damages" because, as explained above: (1) "damage" as a term of art means "legally cognizable harm," and the *de minimis* rule is part of the cluster of ideas surrounding such harm; and

---

[11] Of course, many criminal statutes will have contrary textual and contextual indicators that circumvent the rule.  As explained in more detail below, Congress knows how to draft a criminal statute that circumvents the *de minimis* rule when it wants to.  A criminal battery statute that applies to all unwanted contact will not be subject to the rule because its plain language prohibits the contact, not any resultant damages.   A theft statute that criminalizes theft of all dollar amounts (albeit to varying degrees) would not be subject to the rule because theft of any amount of money is still theft.

(2) the plain meaning of "damages" requires loss in value or usefulness, which means that harm not resulting in either of these things is *de minimis*.

Alternatively, even if Section 844(i) does not affirmatively incorporate the *de minimis* rule, the Supreme Court has held that the rule applies to "all enactments (absent contrary indication)," and there is nothing in Section 844(i) to upset the presumption that the *de minimis* rule applies. *Wisc. Dep't of Rev.*, 505 U.S. at 232. Congress knows how to draft "contrary indications" to the *de minimis* rule, but it did not do so in Section 844(i). In general, Congress circumvents the *de minimis* rule through two methods. The first method is to make clear in the text of the statute that it applies to *any* damage, no matter how trivial. For instance, the statute criminalizing destruction of government property specifically applies to "*any* depredation against *any* property of the United States." 18 U.S.C. § 1361 (emphasis added). It also sets forth specific dollar amount thresholds to drive home that all property damages are covered, though not all of them carry the same maximum sentence. *Id.* ("If the damage or attempted damage to such property exceeds the sum of $1,000, by a fine under this title or imprisonment for not more than ten years, or both; if the damage or attempted damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year, or both."). Congress did not include any such language in Section 844(i). The second (and more common) method is to draft the statute in such a way that it punishes conduct totally independent of any resulting damages. For example, the statute restricting fires on public lands prohibits "kindl[ing] or causing to be kindled" a fire near any material upon lands under United States jurisdiction and then "leav[ing] said fire without totally extinguishing the same, or permit[ing] or suffer[ing] said fire to burn or spread beyond his control, or

12

leav[ing] or suffer[ing] said fire to burn unattended." 18 U.S.C. § 1856. Section 1856 covers *all fires* which are left without being extinguished, permitted to spread out of control, or simply left unattended are covered. Whether the fire causes "damage" is irrelevant. Section 844(i), however, only applies to fire that "damages" property.

In short, Section 844(i) is subject to the *de minimis* rule under any form of statutory analysis. Both the term-of-art meaning and the plain meaning of the "damages" support Mr. Ramirez's reading. And, most importantly, the *de minimis* rule is presumed to apply to all enactments anyway. *Wisc. Dep't of Revenue* 505 U.S. at 231; *Biden,* 143 S. Ct. at 2378 (Barrett, J., concurring). The Court should therefore make a pretrial determination that, as a matter of law, the *de minimis* rule applies to Section 844(i).

## II. Basic Principles of Federalism, As Well As The History Of Section 844(i) And The Common Law Of Arson Support Mr. Ramirez's Reading Of The Statute.

If a criminal statute remains ambiguous after considering the text, courts may consider basic principles of federalism, as well as the statute's history and purpose to resolve the ambiguity. *Bond*, 572 U.S. at 859; *Barber v. Thomas*, 560 U.S. 474, 488 (2010). In this case, bedrock principles of federalism, the history of Section 844(i), and the history of the common law of arson support Mr. Ramirez's textual argument.

Courts may "refer to basic principles of federalism embodied in the Constitution to resolve ambiguity in a federal statute." *Bond*, 572 U.S. at 859. "Unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes." *Jones v. United States*, 529 U.S. 848, 850 (2000) (citing *United States v. Bass*, 404 U.S. 336, 349 (1971)). The Supreme Court makes this "background assumption" because "Congress does not normally intrude upon the police power of the States." *Bond*, 572 U.S. at 862–63. So even if a statute may

13

have a broad meaning that alters the balance of federal-state relations "on its face," the Supreme Court "would not apply the statute to such conduct absent a plain statement from Congress.  The notion that some things 'go without saying' applies to legislation just as it does to everyday life."  *Id.* at 857.

Applying the *de minimis* rule to Section 844(i) is consistent with principles of federalism.  Indeed, the Supreme Court already has cautioned that Section 844(i) should be read narrowly in light of federalism and constitutional concerns. In *Jones*, the Supreme Court held that Section 844(i)'s interstate commerce element did not employ the full breadth of the Commerce Clause, and that property subject to the statute must be "active[ly] employ[ed]" for interstate commercial purposes.  529 U.S. at 859.  Importantly, the Supreme Court also cautioned that arson was a "paradigmatic common-law state crime," and construing Section 844(i) too broadly would violate both the Commerce Clause and basic principles of federalism.[12]  *Id.* at 858–59 ("[Section] 844(i) is not soundly read to make virtually every arson in the country a federal offense.").

An overbroad construction of the term "damages" would lead to the same problem envisioned in *Jones* and *Bond*.  It would federalize most arson cases and allow the

---

[12] The *Jones* case was decided around the same time as two other key decisions limiting Congress's authority to pass statutes under the Commerce Clause.  *See United States v. Morrison,* 529 U.S. 598, 627 (2000) *(*holding that the civil remedy provision of the Violence Against Women Act was unconstitutional, and that Congress may not render it so by looking at the aggregate effect of violent criminal conduct based on that conduct's effect on interstate commerce); *United States v. Lopez*, 514 U.S. 549, 561 (1995) (holding that the Gun-Free School Zones Act was unconstitutional because possession of a gun near a school zone was not an economic activity in its own right).  Thus, *Jones* must be read against the backdrop of the Supreme Court's concerns in *Morrison* and *Lopez* about creating civil and criminal enforcement provisions that are beyond the scope of the Constitution on prototypical state-law issues.  *See Odom*, 252 F.3d at 1297 (discussing impact of *Morrison* and *Lopez* on construction of Section 844(i)).

Government to nullify the interstate commerce element by charging cases where the damages have no conceivable effect on interstate commerce. Imagine a fan who goes to the Stadium and gets frustrated by the game. He utters aloud, "I hate this Stadium and want to burn it down," before putting out a cigarette against one of the Stadium's walls. The cigarette creates a small black mark. Under the broadest reading of Section 844(i)—which the Government presumably will defend—this fan has committed federal arson and is subject to a mandatory minimum term of imprisonment. So too would a similar fan who sets off a firecracker in the Stadium's parking lot, or even a mischievous teenager who throws a firecracker at a vacant property on the rental market. Lest the Court think these hypotheticals are baseless scaremongering, Mr. Ramirez encourages the Court **to look at the facts that are stipulated in this Motion** for purposes of applying the *de minimis* rule to Mr. Ramirez's case. Mr. Ramirez is not describing a farfetched parade of horribles—he is describing what the Government is doing to him right now.

The history of Section 844(i) also clearly comports with Mr. Ramirez's reading. Section 844(i) was originally enacted as part of Title XI in the Organized Crime Control Act of 1970, Pub. L. No. 91–452, § 1102, 84 Stat. 952, 956 (1970). The purpose of the statute was to address the threat of bombings by radical political groups like the Weather Underground. *See* H.R. Rep. No. 91-1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4013 ("Bombings and the threat of bombings have become an ugly, recurrent incident of life in cities and on campuses throughout our nations. . . . [B]etween January 1, 1969, and April 15, 1970 (approximately 15 ½ months) law enforcement officials reported a total of 4,330 bombings, 1,475 attempted bombings, and 35,129 attempted bombings."); *see also* John Panneton, *Federalizing Fires: The Evolving Federal Response to Arson*

15

*Related Crimes*, 23 Am. Crim. L. Rev. 151, 193 (1985) ("Emphasis during the hearings was placed on these recurring incidents by radical and revolutionary groups."). The statute was amended in 1982 to resolve a circuit split over whether using an explosive device was a necessary element, or whether the crime could be committed by other means like igniting a flammable liquid. *See* Anti-Arson Act of 1982, Pub. L. No. 97-298, 96 Stat 1319 (1982). While the current form of the statute does not strictly require a defendant to use an explosive device, many of the cases brought under Section 844(i) are still in the realm of terrorism or organized crime. *See, e.g., United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004) (discussing case of defendant who wanted to "wage jihad in Florida" and was convicted of conspiracy to commit federal arson). Unsurprisingly, one of the most common fact patterns litigated under Section 844(i) is the burning of religious buildings—a terror tactic with a sordid reputation in our nation's history.[13] *See United States v. Odom*, 252 F.3d 1289, 1292 (11th Cir. 2001) (discussing the case of two defendants who burned down an African American church).

Finally, the common law of arson further supports the application of the *de minimis* rule to Section 844(i). At common law, arson did not require proof of "damage" to a property by means of fire. Instead, the offense required a broader showing of "burning." 3 Jens David Ohlin, Wharton's Criminal Law § 33:2 (16th ed.), Westlaw (database updated

---

[13] In *Odom*, the Government failed to demonstrate that the particular church at issue was actively used in interstate commerce. But other examples abound where the underlying convictions were upheld. *See United States v. Grassie*, 237 F.3d 1199, 1202 (10th Cir. 2001) (conviction for burning a Mormon church "with anti-Mormon animus"); *United States v. Gillespie*, 452 F.3d 1183, 1191 (10th Cir. 2006) (conviction for burning a synagogue against a defendant who wanted to "start a racial holy war"); *United States v. Terry*, 257 F.3d 366, 367 (4th Cir. 2001) (burning of Baptist church); *United States v. Rayborn*, 312 F.3d 229, 232 (6th Cir. 2002) (same); *United States v. Beck*, 250 F.3d 1163, 1165 (8th Cir. 2001) (burning of Lutheran church).

August 2024); 3 Wayne R. LaFave, Substantive Criminal Law § 21.3(b) (3d ed.), Westlaw (database updated October 2024).  Most homes[14] were made of wood when the common law developed, so "burning" came to be defined as "charring," *i.e.*, "when the wood is reduced to coal, and its identity changed."  *State v. Hall*, 93 N.C. 571, 573 (1885); *see also* John Poulos, *The Metamorphosis of the Law of Arson*, 51 Mo. L. Rev. 295, 317 (1986) ("The common law required the actual combustion of a portion of the material of which the dwelling house was composed.").  But even under the broader "burning" element, the common law of arson held that it was not sufficient for material to be "***merely discolored by heat, scorched, or damaged by smoke***."  *See* LaFave, *supra*, § 21.3(b); *see also* Wharton's Criminal Law, *supra*, § 33:2 (explaining that "mere discoloration as a result of smoke or heat" was not sufficient).  In short, while Section 844(i) is not patterned precisely after the common law crime of arson, even the common law had a *de minimis* rule for arson that excluded discoloration caused by heat, scorching, and smoke damage. This context, in addition to the term "damage" in the text of Section 844(i), weighs in favor of construing Section 844(i) to have *a de minimis* limitation—***as all statutes do*** absent contrary indication. *Wisc. Dep't of Rev.*, 505 U.S. at 232.

### III. If Section 844(i) Is Not Construed Under The *De Minimis Rule*, Then The Statute Is Ambiguous And Subject To The Rule of Lenity.

If Section 844(i)'s text, history, and purpose do not resolve the textual ambiguity, then the rule of lenity applies.  Under the rule of lenity, "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor."  *United States v. Davis*,

---

[14] Common-law arson could only be committed against a "dwelling house," not all buildings in general.  Wharton's Criminal Law, *supra*, § 33:1; *see also* LaFave, *supra*, § 21.3(c).  This common-law limitation also supports a *de minimis* rule for Section 844(i).

588 U.S. 445, 464 (2019).  "That rule is 'perhaps not much less old than' the task of statutory 'construction itself.'"  *Id.* at 464 (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820)).  "And much like the vagueness doctrine, it is founded on 'the tenderness of the law for the rights of individuals' to fair notice of the law 'and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.'"  *Id.* at 464–65.  Lenity applies when "after consulting traditional canons of statutory construction, we are left with an ambiguous statute."  *Shular v. United States*, 589 U.S. 154, 165 (2020) (citation omitted).  In other words, a "grievous ambiguity" must remain "after the Court considers the statute's text, structure, history, and purpose."  *Barber*, 560 U.S. at 488.

Mr. Ramirez believes the traditional tools of statutory construction point to a *de minimis* rule for Section 844(i), but if they do not, then the meaning of "damages" is grievously unclear.  One might argue that the term should be construed in the broadest sense possible—any bad effect on property at all.  That definition would not give people fair notice of when they are committing federal arson.  The angry fan putting out a cigarette on the Stadium's walls or the mischievous teenager throwing a firecracker at a vacant rental property would suddenly find themselves subject to a mandatory minimum prison sentence.  To the extent that both sides in this case offer plausible definitions, the rule of lenity requires this Court to adopt the definition most favorable to Mr. Ramirez.

Indeed, the Supreme Court already has applied the rule of lenity to Section 844(i) in *Jones*.  529 U.S. at 849 ("Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity . . . .").  As explained above, *Jones* and *Bond* stand for the proposition that Section 844(i) must be narrowly construed because arson is a

18

"paradigmatic common-law state crime," and construing Section 844(i) too broadly would potentially violate both the Commerce Clause and basic principles of federalism. *Jones* 529 U.S. at 59 ("[Section] 844(i) is not soundly read to make virtually every arson in the country a federal offense."); *Bond*, 572 U.S. at 863 ("'Congress does not normally intrude upon the police power of the States.'"). For the same reasons, the Court should apply the rule of lenity to the "damages" requirement of Section 844(i).

## IV.     The De Minimis Rule Also Applies To Section 844(i)'s Enhancement For Personal Injury.

The *de minimis* rule applies to the whole of Section 844(i), including the enhancement for "personal injury." Although the statute's personal injury clause does not contain the term "damages," the Eleventh Circuit has repeatedly applied a *de minimis* requirement to the statutory "physical injury" requirement of the Prisoner Litigation Reform Act. 42 U.S.C. § 1997e(e); *Thompson v. Smith*, 805 F. App'x 893, 905 (11th Cir. 2020). Physical injury is essentially synonymous with personal injury. *Bodily injury*, Black's Law Dictionary (12th ed. 2024) ("Physical damage to a person's body. — *Also termed personal injury; personal bodily injury; physical injury*.") And there is otherwise nothing in the enhancement that would override the Supreme Court's presumption that the *de minimis* rule applies. *Wisc. Dep't of Rev.*, 505 U.S. at 232.

## MOTION TO DISMISS INDICTMENT

Rule 12(b) generally permits resolution of any objection that the Court can determine "without a trial on the merits." See Fed. R. Crim. P. 12(b)(1). The Supreme Court instructs that a "defense" under Rule 12(b)(1) may be resolved by motion "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Covington*, 395 U.S. at 60. Here, a trial would

be of no help in determining whether the *de minimis* rule applies because the maximum possible extent of the damages to the Stadium is not in dispute.  Accordingly, if the Court holds that Section 844(i) incorporates the *de minimis* rule, it also should dismiss the Indictment.  Alternatively, the Court should order an evidentiary hearing to establish the maximum possible extent of alleged damages, which Mr. Ramirez will not dispute for purposes of the hearing.  *Pope,* 613 F.3d at 1260; *Harkness*, 2007 WL 865855, at *2.

"Whether a particular activity is a *de minimis* deviation from a prescribed standard must . . . be determined with reference to the purpose of the standard*." Wisc. Dep't of Rev.,* 505 U.S. at 232.  The party invoking the rule must identify a "plausible . . . purpose" of the enactment in light of which the violation "might count as trivial."  *Bozeman*, 533 U.S. at 154–56.  In addition, the Supreme Court considers: (1) whether it would be "especially unreasonable to abandon normal application of the *de minimis* principle" in construing a statute that operates in "stark, all-or-nothing fashion;" and (2) whether labeling such a violation *de minimis* would render every other violation of the enactment *de minimis*.  *Wisc. Dep't of Rev.,* 505 U.S. at 231; *Bozeman*, 533 U.S. at 154–56.  This case easily satisfies all of the relevant factors.

In light of Section 844(i)'s purpose, the maximum possible extent of the "damage" charged by the Government is self-evidently trivial. The purpose of the statute is to encompass arson cases of high significance (like those involving terrorism or organized crime) without federalizing "virtually every arson in the country."  *Jones*, 529 U.S. at 859.  Given this purpose, cursory stains and five-inch spots of corrosion are patently trivial to a 25,000-seat, 435,000-square-foot sports venue.  The Stadium has experienced no loss whatsoever in value or usefulness.  Some of the marks already have been washed away.

20

Others are indistinguishable from the various cracks and crevices that are ubiquitous throughout the Supporters' Terrace and that are visible in the Government's own photographs.  If the Court has any doubts, Mr. Ramirez requests an evidentiary hearing at which he will not contest causation or intent.  The sole purpose of the hearing will be to ascertain the maximum possible extent of the "damages" alleged by the Government— similar to an evidentiary hearing on probable cause for a motion to suppress.  No full-blown trial is required for Mr. Ramirez to prevail on this defense.  Fed. R. Crim. P. 12(b)(3).

Moreover, it would be unreasonable to abandon the normal application of the *de minimis* rule here because Section 844(i) is the type of "stark, all-or-nothing" statute to which the *de minimis* rule usually applies.  *Wisc. Dep't of Rev.*, 505 U.S. at 232.  Section 844(i) has no lesser-included offenses or degree levels.  You either commit federal arson, or you do not.  And if you do, you are subject to a mandatory minimum sentence of at least five years in prison (seven years if "personal injury" results).  18 U.S.C. § 844(i).

Finally, labeling Mr. Ramirez's alleged violation as *de minimis* would not render every other violation of Section 844(i) *de minimis*.  The usual cases of federal arson involve total destruction or heavy damage of property.  *See, e.g., United States v. Elliot*, 797 F. App'x 750, 752 (4th Cir. 2019) ("The fires completely destroyed the Kinston property . . . ."); *United States v. Forsythe*, 711 F. App'x 674, 675 (3d Cir. 2017) ("Andrea Forsythe burned down a house she was renting in Sturgeon, Pennsylvania, in an attempt at insurance fraud.").  Applying the *de minimis* rule here would not mean that run-of-the-mill cases under Section 844(i) would be subject to dismissal.  To the contrary, this represents a particularly egregious example of prosecutorial overreach with no legally

21

cognizable "damage" to speak of.  If anything, this case will serve as a warning that the Government should use Section 844(i) only in the cases that actually call for it.

Accordingly, the *de minimis* rule clearly applies to Section 844(i) as a matter of law.  Based on the stipulated and undisputed facts of the case, the maximum extent of the damages alleged to have been caused by Mr. Ramirez is *de minimis*.  Thus, the Government cannot show damages, and the Indictment must be dismissed.

## CONCLUSION

In the first chapter of his book, Justice Gorsuch talks about a case that originated in this very jurisdiction and ultimately was reversed by the Supreme Court.  *See Yates v. United State*s, 574 U.S. 528 (2015).  The defendant in that case, John Yates, was charged with violating the anti-document-shredding provision of the Sarbanes-Oxley Act because he allegedly disposed of undersized fish to impede a federal investigation*.  Id.* at 534.  Mr. Yates eventually prevailed in the Supreme Court, but only after "eight years" of litigation "before three courts and thirteen different judges."  Gorsuch, *supra*, at 30.  In the process, Mr. Yates lost his livelihood and his fishing boat.  *Id.*  He and his wife now live in a triple-wide trailer and depend on Social Security income.  *Id.*  All of this happened to Mr. Yates because the Government adopted a tortured interpretation of a statute.

The Court now finds itself presiding over yet another case where a federal statute has been distorted to fit a peculiar set of facts that, in any normal world, would not result in a mandatory minimum prison sentence of seven years.  The Court should send a clear message that such abuses will not be tolerated.  Mr. Ramirez respectfully asks the Court to: (1) make a pre-trial determination that 18 U.S.C. § 844(i) is subject to the *de minimis* rule; and (2) dismiss the Indictment*.  **At a minimum***, the Court must make the first

22

determination because it is a pure question of statutory construction and will have a significant impact on the remainder of the case.  However, if the Court makes the pre-trial determination that Mr. Ramirez seeks, Mr. Ramirez also requests that the Indictment be dismissed.  Mr. Yates's past cannot be the prologue to Mr. Ramirez's future.

Dated: December 27, 2024                   Respectfully submitted,

                                           A. Fitzgerald Hall, Esq.
                                           Federal Defender, MDFL

                                           */s/Vitaliy Kats, Esq.*
                                           Vitaliy Kats, Esq. (FBN 0118748)
                                           Assistant Federal Defender
                                           201 South Orange Avenue, Suite 300
                                           Orlando, FL 32801
                                           Telephone: 407-648-6338
                                           vitaliy_kats@fd.org

## CERTIFICATE OF CONFERRAL

Mr. Ramirez's counsel certifies that: (1) they conferred with Government's counsel in a good faith effort to resolve this motion; (2) the Government opposes the motion; and (3) the motion is not covered by the Court's scheduling order.

                                           */s/Vitaliy Kats, Esq.*
                                           Vitaliy Kats, Esq.

## CERTIFICATE OF SERVICE

I certify that on December 27, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                           */s/Vitaliy Kats, Esq.*
                                           Vitaliy Kats, Esq.

23

## APPENDIX A – EXAMPLES OF GOVERNMENT PHOTOS (BLACK SPOTS VISIBLE)

*Section 23, spots 18 and 19 in Row D*



*Section 23, spots 13 and 14 in Row F*



24

## APPENDIX B – EXAMPLES OF WALKTHROUGH PHOTOS (BLACK SPOTS & SOME WHITE SPOTS GONE)

*Section 23, spots 18 and 19 in Row D*



*Section 23, spots 13 and 14 in Row F*



25