**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

     **v.**                             **CASE NO. 6:24-cr-231-WWB-RMN**

**GIOVANNI ISAI RAMIREZ REYES**

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR PRETRIAL DETERMINATION AND TO DISMISS INDICTMENT**

The United States of America, by Roger B. Handberg, United States

Attorney for the Middle District of Florida, respectfully opposes the motion of

Defendant Giovanni Isai Ramiriz Reyes ("Defendant") requesting (a) a pretrial

determination of a question of law, and (b) dismissal of the Indictment. Doc. 32.

Based on the facts and legal standards set forth below, the Court should deny

the Defendant's motion.

## BACKGROUND

On February 24, 2024, the Orlando City Soccer Club ("Orlando City")

hosted a Major League Soccer ("MLS") match and faced off against the Montreal

Football Club, a Canadian soccer team. The venue was Inter&Co Stadium

("Stadium") in downtown Orlando, FL, a soccer-specific building with a capacity

of approximately 25,000 people, and the home field to both Orlando City as well

the Orlando Pride of the National Women's Soccer League. The Stadium has

mobile vendors, concession stands, bars, and retail locations in which food,

beverages, and merchandise are sold before, during, and after soccer matches.

The Stadium only accepts credit card and mobile payments, and tickets to gain access to the venue require online purchasing through Ticketmaster, as there is no box office at the Stadium to purchase tickets.[1]

As the thousands of soccer fans entered the Stadium to watch the match on February 24, 2024, each walked past two signs prominently displayed at entrances: a purple sign identified as "Stadium Prohibited Items," and a white sign that is identified as the "MLS Fan Code of Conduct":

 

---

[1] Ticketmaster Entertainment, LLC, is a ticket sales and distribution company with headquarters in Beverly Hills, CA.  Its parent company, Live Nation Entertainment, Inc., is an American multinational entertainment company with headquarters also in Beverly Hills, CA.

The purple sign identifies items that are not allowed inside the Stadium, including "fireworks, pyrotechnics or any items that could be missiles or projectiles."  The white sign states that MLS "venues are committed to creating a safe, comfortable, and enjoyable soccer experience for all guests in and around our stadiums and facilities," and that "MLS and its clubs will immediately action" behaviors that represent a threat to the safety of events, such as "possession or use of an unauthorized pyrotechnic device, smoke or firework, or attempting to introduce one inside the venue."  Stadium surveillance footage shows the Defendant enter the Stadium and pass these signs with his friend, R.K.  But the Defendant ignored the warnings contained on these two signs and, as he later admitted to law enforcement officers, smuggled into the Stadium two flares, a type of pyrotechnic.

During the soccer match, Stadium surveillance footage shows that the Defendant and R.K. walked about the Stadium, and eventually traveled to an upper deck area, where they remained for approximately two hours.  At approximately 9:00 p.m., while the soccer match was taking place, the Defendant entered a Stadium walkway entry area, ignited two flares, and threw both into a crowd of spectators, creating two separate fires shown below in a still image:

3



In his motion, the Defendant attempts to tie the use of flares and "throwing flares" to soccer traditions, citing an eight-paragraph Swedish webzine blog post. *See* Doc. 32 at 2. But the Defendant does not face a federal arson prosecution and a mandatory-minimum prison sentence for possessing a flare, brandishing and holding a flare, or even merely "throwing a flare," and there is no need to "imagine" such a world. *Id*. The Defendant faces criminal prosecution because he intentionally ignited and threw two flares directly into a crowd of people, causing substantial blazes (see image, above) that melted holes into the concrete and burned a four-year-old girl, as further detailed below.

Immediately after throwing the flares, the Defendant fled the area of the Stadium from which he had thrown them, and quickly left the Stadium. When confronted by law enforcement officers on April 29, 2024, the Defendant

4

identified himself in the images from the Stadium on February 24, 2024, and admitted throwing the ignited flares into the crowd.  Stadium personnel were able to extinguish the fires created by the flares, which in addition to melting and burning holes in the concrete (damages that remain today), also damaged Stadium seats. The cost of the damages to the Stadium was initially estimated at between $3,000 – $5,000, and a general contracting company that specializes in concrete services later estimated that repairing and/or replacing the damage to the Stadium concrete would cost approximately $2,200.  Those damages could be more costly depending on whether a small section of a row of seating and concrete can be replaced, or if the entire row of seating and concrete would need to be replaced.

The fire damage to the Stadium seats and concrete was not the only consequence of the Defendant's malicious act of intentionally throwing two ignited flares into a crowd of fans.  A four-year-old girl, E.Z., attending her first Orlando City match, received injuries directly caused by the fire from the ignited flares the Defendant threw.  According to K.A., E.Z.'s mother, the two were watching the soccer match when the ignited flare bounced off K.A.'s cousin and eventually landed on the concrete surface near her and E.Z.  As Stadium workers rushed to extinguish the fire created by the flare, K.A. observed that the fire had burned E.Z.  Stadium security escorted K.A. and E.Z. to the Orlando Fire Department EMS station located in the Stadium, where E.Z. was treated for physical injuries to her body, including burns on her shoulder and under her arm.

Stadium medics applied burn gel to those areas, and K.A. stated that E.Z recovered from her burns after a few days of applying medication to those burned areas.  K.A. also noted that E.Z. is afraid to return to the Stadium given her experience.

On September 18, 2024, a grand jury returned an Indictment charging the Defendant with maliciously damaging the Stadium by means of fire and thereby causing personal injuries to E.Z., in violation of 18 U.S.C. § 844(i).  Doc. 1.  That statute provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

Congress enacted 18 U.S.C. § 844(i) as part of Title XI of the Organized Crime Control Act of 1970, Pub.L. 91–452, § 1102, 84 Stat. 952, "because of the need 'to curb the use, transportation, and possession of explosives.'" *Russell v. United States*, 471 U.S. 858, 860, n.5 (1985).  The word "fire" did not appear in the statute as originally composed, and was add by statutory amendment in 1982.  *See* Pub.L. 97-298.  As the Supreme Court explained:

> The House Report accompanying the 1982 legislation explained that the original measure, which was confined to damage caused by "an explosive," had resulted in problems of practical application.  H.R.Rep. No. 678, 97th Cong., 2d Sess., 2 (1982).  In particular, the Report noted a Circuit conflict on the question whether the measure covered use of gasoline or other flammable liquids to ignite a fire.  *Id.*, at 2, and nn. 5–6.

*Jones v. United States*, 529 U.S. 848, 853, n.4 (2000).  The Eleventh Circuit noted that the same House Report cited by the Supreme Court made "clear that [the] original intent in enacting the statute was to include both explosive and non-explosive fires."  *United States v. Anderson*, 782 F.2d 908, 913 (11th Cir. 1986).

The elements of 18 U.S.C. § 844(i) are as follows:

1)    the Defendant damaged or attempted to damage the building or other real or personal property described in the indictment by means of a fire;

2)    the Defendant acted intentionally or with deliberate disregard of the likelihood that damage or injury would result from his acts; and

3)    the building or other real or personal property that the Defendant damaged or attempted to damage was used in interstate or foreign commerce or in activity affecting foreign or interstate commerce.

*See* Eleventh Circuit Pattern Jury Instruction O28; *see also United States v. Davis*, 835 Fed.Appx. 1010 (11th Cir. 2021) ("To prevail on an arson charge, the government must prove that the defendant (1) maliciously damaged or destroyed, (2) by means of fire or an explosive, (3) a building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.").  While 18 U.S.C. § 844(i) does not define the term "maliciously," the Eleventh Circuit has joined other circuits specifically holding that, based on common law and the statutes legislative

7

history, the term "maliciously" includes acts done "intentionally or with willful disregard of the likelihood that damage or injury would result," and this is reflected in this circuit's pattern jury instructions, as cited above.  *See United States v. Morrison*, 218 Fed.Appx. 933, 940 – 941 (11th Cir. 2007).  18 U.S.C. § 844(i) also establishes an enhanced punishment if an individual receives personal injuries as a result of the prohibited conduct.

On December 27, 2024, the Defendant filed a "Motion for Pretrial Determination of Question of Law and, Separately, Motion to Dismiss Indictment," and a related "Notice of Request for Oral Argument and Evidentiary Hearing."  Docs. 32 and 33.  For the reasons set forth below, the Court should deny the Defendant's motion at Doc. 32 without the need for an oral argument or evidentiary hearing requested in Doc. 33.

## MEMORANDUM OF LAW

The phrase "*de minimis non curat lex*" means the "law does not concern itself with trifles."[2]  Courts have used the doctrine to find that a civil claim is so trivial that the court does not need to deliver a decision on the merits of the case.

> *De minimis non curat lex* "the law does not concern itself with trifles" is exceptional among the equity maxims.  The ancient phrase still shows up frequently, not only in modern decisional law but also in state statutes and federal regulations.  Judges regard *de minimis non curat lex* as limiting their own prerogative: Once they conclude that an asserted interest is trivial, they withhold what the asserters seek.  This predilection can relocate what parties fight for in court.  Litigants lose when their stance is cast as trivial or when they fail to persuade the judge that their adversary

---

[2] Black's Law Dictionary (9th ed. 2009).  The term *"de minimis"* alone means "trifling" or "minimal."

has made a trivial claim. They win when they escape the "trivial" label that their adversary has tried to impose or when they persuade the judge that it is their adversary, not they, who is making a trivial claim.[3]

Courts have applied the doctrine more frequently in some areas of law than others, with taxation matters, union and labor cases, voter disenfranchisement cases, First Amendment litigation, the Eighth Amendment and use of force against inmates lawsuits, and copyright infringement complaints having greater application.[4]  There has been an increase in application of the doctrine to Fourth Amendment jurisprudence since 1977, specifically addressing the reasonability of searches and seizures in either "situations in which the intrusion was so minimal as to be deemed no intrusion at all," or "situations where the court will recognize an intrusion but find it to be reasonable."[5]

Reviewing a comprehensive treatment of the application of the "*de minimis*" principle found in the annotation "*De minimis non curat lex*," 44 A.L.R. 168, demonstrates the rarity of its use in the context of criminal prosecutions, which is not surprising given the "general observations" such a review provides:

First, that the maxim operates in courts of law only in cases where no right other than to recover money is involved.

---

[3] Anita Bernstein, *Civil Rights Violations = Broken Windows: De minimis Curet Lex*, 62 Fla. L. Rev. 895 – 898 (2010).

[4] Jeffrey Brown, *How Much is too Much? The Application of the De Minimis Doctrine to the Fourth Amendment*, 82 Miss. L.J. 1097, 1100 – 1105 (2013).

[5] *Id*. at 1109.

> Second, that "trifle" is a relative term, depending upon circumstances and, in some degree, the amount involved in the suit.
>
> Third, that the maxim will not excuse trifling irregularities in complying with statutory requirements.

*Id*.  While some state legislatures and courts have recognized the "*de minimis*" principle as a means to dismiss and overturn certain criminal prosecutions and convictions,[6] neither Congress nor federal courts have taken similar steps.  *See e.g., State of New Jersey v. Bazin*, 912 F.Supp.106, 113 (D. New Jersey 1995) ("There is no counterpart to New Jersey's *de minimis* statute in the Federal Rules of Criminal Procedure, the Local Rules, or any other federal statute.  The court has found no federal cases which addressed a motion to dismiss criminal charges on *de minimis* grounds.").

Neither should this Court take the step the Defendant requests and read the "*de minimis*" maxim into its interpretation of a federal criminal statute.  Such a step would be unnecessary and improper, as would be the dismissal of the Indictment the Defendant also seeks, as outlined below.

---

[6] For an overview, *see* "Defense of inconsequential or de minimis violation of criminal prosecution," 68 A.L.R. 5th 299; *see also Dunn v. United States*, 976 A.2d 217, 223 (D.C. 2009) ("[The defendant] fails to cite any authority for a *de minimis* defense in the District. Some jurisdictions have recognized *de minimis*-type defenses, but they have done so through legislation, not judicial decree . . . As a result, we lack the power to give Dunn the relief that he seeks.")

I.    **18 U.S.C. § 844(i) does not presume a "*de minimis*" rule in the context of damages.**

Congress did not specifically define the word "damages" in 18 U.S.C. § 844(i).  Rather than drawing the plain meaning out of the text (i.e., *exegesis*), the Defendant asks the Court to read into the statutory text (i.e., *eisegesis*) the "*de minimis*" maxim, a request for which the Defendant can identify no precedent in the context of criminal prosecutions.  As summarized above, courts have applied the maxim to deny relief in certain contexts where the claimed monetary loss or civil damages is insignificant, often trivial to the point of indeterminate.  As Judge Richard Posner explained in *Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992),

> if a loss is not only small but also indefinite, so that substantial resources would have to be devoted to determining whether there was any loss at all, courts will invoke the *de minimis* doctrine and dismiss the case, even if it is a constitutional case.  The costs of such litigation overwhelm the benefits.

*Id*. at 303.  Judge Posner further cautioned, however, that the *de minimis* doctrine "has little or no proper application to cases in which the monetary cost of the loss is, though tiny, readily determinable."  *Id*.  "The law does not excuse crimes or torts merely because the harm inflicted is small."  *Id*.

Even assuming *arguendo* that the *de minimis* doctrine applies in a case such as this one, there is no basis for the Court to make a pretrial determination that, as a matter of law, 18 U.S.C. § 844(i) incorporates a "*de minimis*" doctrine, as the damage done to the Stadium and the personal injuries suffered by E.Z. as a result of the Defendant's actions are readily determinable and not insignificant, and, therefore, not "*de minimis*."  While the Defendant never explicitly agrees in

11

his motion to any specific amount related to the Stadium damages and/or the cost of repair, the Defendant does state he would "not dispute for purposes of [an evidentiary] hearing" the "maximum extent of damages" to the Stadium.  Doc. 32 at 4.  Those damages are identified above and currently range from an estimated $2,200 to an estimated $5,000, which would meet any reasonable "*de minimis*" standard.  *See, e.g., Harrison v. Brookhaven School District*, 82 F.4th 427, 431 – 433 (5th Cir. 2023) (the court found that while Title VII does not permit liability for "*de minimis*" workplace trifles, the court found that the plaintiff's complaint "alleges more than a *de minimis* injury inflicted on her," specifically a "personal expenditure of approximately $2,000," an "injury [that] clears the *de minimis* threshold").  In addition, while ignoring or minimizing certain facts, the Defendant acknowledges that the ignited flares he threw caused bodily burns to E.Z. that required medical treatment, easily meeting any reasonable "personal injury" standard under 18 U.S.C. § 844(i).  *See Id*. at 7, n.5.  Since the determinability and significance of damages are not reasonably in dispute, and are not "*de minimis*," the Court need not make the pretrial determination sought by the Defendant.

In addition, contrary to the Defendant's argument, "damage," "damaged," and "damages," are not legal terms of art as they relate to 18 U.S.C. § 844(i). *See* Doc. 32 at 8.  Though both the Stadium and E.Z. did suffer "legally cognizable harm," the terminology in this context plainly and unambiguously

means a "loss or harm resulting from injury to person, property, or reputation,"[7] a standard which, again, the facts easily meet.

Most significantly, however, is the fact that 18 U.S.C. § 844(i) not only does not affirmatively incorporate the *"de minimis"* doctrine in relation to the term "damages," the statute does not require *any* "damage":

> Whoever maliciously damages or destroys, *or attempts to damage* or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce . . .

*Id*. (emphasis added).  Thus, the statute makes explicit that there is no minimal damage requirement, only an "*attempt* to damage," for a violation of the statute to have occurred.  The Defendant asks the Court to read into 18 U.S.C. § 844(i) a minimally low threshold of "damages" for the purpose of arguing that he slides in under that threshold.  But the statute plainly requires no damages at all.  The statute covers attempts to damage, and everything from that point of "attempts to damage" up to and including actually causing any damage, no matter how minimal or maximal.

Thus, while there is no need for the Court to make a pretrial determination that, as a matter of law, 18 U.S.C. § 844(i) incorporates the "*de minimis*" doctrine, the Court can find that the statute does not presume a "*de minimis*" rule in the context of damages based on the plain wording of the statute that proscribes any *attempt* to damage, regardless of success in damaging.  And, because there is

---

[7] https://www.merriam-webster.com/dictionary/damage

no ambiguity in the statute – much less a "grievous ambiguity" (*see* Doc. 32 at 18) – there is no need for the Court to utilize the rule of lenity.

> **II.    The Defendant has provided no legal authority to dismiss the Indictment at this stage.**

Fed. R. Crim. P. 7(c)(1) requires that an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Under Fed. R. Crim. P. 12(b)(1), a "party may raise by pretrial motion any defense, objection or request that the court can determine without a trial of the general issue."  A motion alleging a defect in the indictment must be raised before trial, unless the defect is regarding the district court's lack of jurisdiction or failure to state an offense, which may be brought at any time while a case is pending.  *See United States v. Baxter*, 579 Fed.Appx. 703, 705 (11th Cir. 2014).

An indictment is sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."  *Id*.; *see also United States v. Jordan*, 582 F.3d 1239, 1246 (11th Cir. 2009) (an indictment that charges a defendant in the language of the relevant statute is sufficient "as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused").

When considering a pretrial motion to dismiss an indictment, a district court's review is limited to "the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).  There is "no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).  As the Eleventh Circuit has held, "an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).  Therefore, an indictment may not be dismissed based on facts outside the indictment, even if those facts are undisputed.  *See United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.").

The Defendant requests the Court dismiss the Indictment that sufficiently alleges he maliciously damaged, by means of a fire, the Stadium, which is used in an activity affecting interstate and foreign commerce, and his prohibited conduct resulted in personal injury to E.Z., in violation of 18 U.S.C. § 844(i).  Doc. 1.  The Defendant asserts dismissal is appropriate because, he argues, a "*de minimis*" rule applies to the statute, and the maximum extent of damages alleged

15

to have been caused by the Defendant is "*de minimis*."  Therefore, according to the Defendant, because the United States cannot show damages, the Court should dismiss the Indictment.  *See* Doc. 32 at 22.

These contentions are without merit.  The plain language of 18 U.S.C. § 844(i) and the essential elements of the statute do not presume or incorporate the "*de minimis*" doctrine in the context of damages.  As stated above, the statute does not require *any* "damage," only an "*attempt* to damage," for a violation of the statute to have occurred.  Because the statute plainly requires no damages at all, reading into 18 U.S.C. § 844(i) a minimally low threshold of "de minimis" damages is not only unnecessary, but also improper.  Furthermore, even if the statute did contain such a principle, for the purposes of considering the Defendant's motion to dismiss, the Court should find that even the low-end estimate of the extent of damages to the Stadium (i.e., $2,200) alleged by the United States would exceed any reasonable "*de minimis*" standard.

But to be clear, the Court does not need to make such a finding.  The factual allegations in the Indictment, viewed in the light most favorable to the United States, are sufficient to charge the offense as a matter of law.  To the extent the Defendant takes issue with the sufficiency of the evidence to support the allegations, including whether the damages to the Stadium and personal injuries to E.Z. are insufficiently minimal, that issue is premature and is properly addressed at trial, and the Defendant cites no statutory authority, case law, or rule authorizing the Court to dismiss the Indictment based on a "*de minimis*"

16

defense.  *See United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (stating that there is no provision in criminal cases for a "pre-trial determination of sufficiency of the evidence").  It is a jury who must decide whether the Defendant's alleged factual conduct as outlined in the Indictment was sufficiently damaging and injurious to meet the legal elements of the offense.  The Defendant's argument that damages and injuries that are readily determinable and comparatively significant are simply "too mimimal" for the prosecution to proceed is not a basis to dismiss the Indictment, and, again, the Defendant cites no statutory authority, case law, or rule to the contrary.

In sum, the Court should deny the Defendant's motion to dismiss.  The Indictment is sufficient, adequately contains the elements of the charged offense, and fairly informs the Defendant of the charge against him.  The Defendant's arguments are irrelevant in a federal criminal prosecution context and constitute improper invitations for the Court to resolve factual disputes.  The Court should conclude that the Indictment alleges a viable criminal offense and that dismissal is not justified.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's "Motion for Pretrial Determination of Question of Law and, Separately, Motion to Dismiss Indictment" (Doc. 32).  Likewise, as there is no need for the Court to make additional evidentiary findings or hear oral argument from the parties, the Court

17

should also deny the Defendant's request for an oral argument and evidentiary

hearing (Doc. 33).

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   /s/ *Adam J. Nate*
        Adam J. Nate
        Assistant United States Attorney
        FL Bar No. 0077004
        400 W. Washington Street, Suite 3100
        Orlando, Florida 32801
        Telephone:  (407) 648-7500
        Facsimile:   (407) 648-7643
        E-mail:       Adam.Nate@usdoj.gov

**U.S. v. RAMIREZ REYES**          **CASE NO. 6:24-cr-231-WWB-RMN**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2025, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to the following:

Vitaliy Kats, Esq.
Attorney for the Defendant

/s/ ***Adam J. Nate***
Adam J. Nate
Assistant United States Attorney
FL Bar No. 0077004
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:        Adam.Nate@usdoj.gov

19