**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.                                                    Case No. 6:24-cr-231-RBD-RMN

GIOVANNI ISAI RAMIREZ REYES

_____

**ORDER**

Before the Court are Defendant Giovanni Isai Ramirez Reyes's motions for

judgment of acquittal (Doc. 172), for new trial (Doc. 173), and challenging any

sentence under the Eighth Amendment (Doc. 171).

In this arson case brought under 18 U.S.C. § 844(i), Ramirez was charged

with maliciously damaging Inter&Co Stadium by throwing two flares during an

Orlando City soccer match. (Doc. 1.) The flares landed in the "Supporters Terrace"

section of the stadium, where they burned for sixty seconds before going out. (*See*

Doc. 157-1; Doc. 166, Tr. 69:2–12; Doc. 168, Tr. 36:1–11.) The flares caused

discoloration of the aluminum bleachers and minor deterioration of the concrete

floor. (Docs. 157-14 to -19; Doc. 158-7.) A four-year-old girl, E.Z., also sustained a

superficial burn when one of the flares burned a hole in her jacket; medics at the

stadium gave her an ice pack, and she recovered after applying burn gel at home

for a few days. (Doc. 167, Tr. 170:6–173:1, 198:14–199:10.) No emergency response

was requested, the match was not paused, and no one evacuated the stadium. (*Id.*

at 29:16–25.) After throwing the flares, Ramirez removed his hat and jacket, went back to his seat, and put the hat and jacket back on before exiting the stadium. (*See* Doc. 157-1; Doc. 166, Tr. 81:3–9.)

At trial, Ramirez moved for a judgment of acquittal ("JOA") (Doc. 143), which the Court denied (Doc. 144), and the jury then found Ramirez guilty of damaging the stadium and injuring E.Z. (Doc. 150). Ramirez now renews his JOA motion, seeks a new trial, and objects to the mandatory minimum sentence—seven years—as cruel and unusual under the Eighth Amendment. (Docs. 171, 172, 173.) The Government opposes. (Docs. 178, 179, 180.) The Court concludes that the Government's evidence was insufficient to prove that Ramirez had the requisite malicious intent.

"A motion for judgment of acquittal is a direct challenge to the sufficiency of the evidence presented against the defendant." *United States v. Aibejeris*, 28 F.3d 97, 98 (11th Cir. 1994). Courts must "view the evidence in the light most favorable to the Government, with all reasonable inferences and credibility choices made in the Government's favor." *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989) (cleaned up). But mere speculation is insufficient to support a conviction. *See id.* at 740–41; *United States v. Hardy*, 895 F.2d 1331, 1335 (11th Cir. 1990). If "a reasonable trier of fact could not find that the evidence establishes guilt beyond a reasonable doubt," the jury's verdict cannot stand. *United States v. Pantoja-Soto*,

2

739 F.2d 1520, 1525 (11th Cir. 1984).

First let's look at what the Government was required to prove on intent. 18 U.S.C. § 844(i) criminalizes "maliciously damag[ing] or destroy[ing], or attempt[ing] to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property." Malice requires that a defendant acted "intentionally or with deliberate disregard." Eleventh Circuit Pattern Instruction O28, Annotations and Comments (2025); *see United States v. Morrison*, 218 F. App'x 933, 941 (11th Cir. 2007). Malice's *deliberate* disregard is more than mere recklessness, which requires only *conscious* disregard of a risk. *See* MODEL PENAL CODE § 2.02(2)(c) (1985) (defining recklessness as conscious, not deliberate, disregard); *United States v. Lung'aho*, 72 F.4th 845, 849 (8th Cir. 2023) ("A reckless act involves consciously disregarding a substantial and unjustified risk, but unlike a malicious one, the risk need not come anywhere close to a likelihood. . . . Malice may be close to recklessness, but it is not the same." (cleaned up)); *see also United States v. Saunders*, 436 F. Supp. 3d 595, 597 (E.D.N.Y. 2020) (willful disregard requires higher degree of certainty than conscious disregard). This difference, subtle but crucial, is about the degree of risk the defendant disregards: malice requires deliberate disregard of a very high risk equivalent to a *likelihood* of damage, while mere recklessness requires only conscious disregard of a lesser *risk*

of damage. *See Lung'aho*, 72 F.4th at 849.[1] The conclusion that mere recklessness is not enough to show malice under the statute is supported by Congress's intent in enacting § 844(i): combatting serious planned bombings and organized arsons during the turbulent 1970s. *See* H.R. REP. NO. 91-1549, at 4013 (1970) ("Bombings have become an ugly, recurrent incident of life" which "attest[s] to the urgent need to enact strengthened federal regulation of explosives."); (Doc. 171-1, p. 1 (Letter from ATF Associate Director of Law Enforcement to Hon. William W. Wilkins, Jr. (Dec. 14. 1989) ("[Section 844(i)] was enacted by the Congress to combat bombings and other serious criminal misuses of explosives . . . [not] malicious mischief or minor damage to property.")).)

Now let's look at the evidence that Ramirez possessed the requisite malice. The Government's evidence on this point consisted of video footage of Ramirez

---

[1] The Eleventh Circuit has not considered whether malice includes mere recklessness. The only district court in this Circuit that has considered this question, albeit very briefly, concluded that malice does include recklessness. *See Rudolph v. United States*, 551 F. Supp. 3d 1270, 1283 (N.D. Ala. 2021). That case was affirmed by the Eleventh Circuit, but the opinion did not discuss malice. *Rudolph v. United States*, 92 F.4th 1038 (11th Cir. 2024). But *Rudolph* did not consider this matter of *degree* thoroughly examined in *Lung'aho*, which distinguished the lower level of conscious disregard of mere recklessness from higher levels of reckless conduct, that is, the deliberate disregard of malice. *See* 72 F.4th at 849. Rather, *Rudolph*'s brief discussion of the matter relied on *United States v. Tsarnaev,* 968 F.3d 24 (1st Cir. 2020), which itself relied on *United States v. Grady*, 746 F.3d 846 (7th Cir. 2014). But *Tsarnaev* (involving the Boston Marathon bomber) is of little use because the parties there agreed that malice included recklessness. 968 F.3d at 101. And *Grady* is of similarly little use, as it merely adopts the widespread definition of malice as intentional or deliberate disregard, same as the Eleventh Circuit. 746 F.3d at 848–49. Only *Lung'aho* persuasively explains the distinction between malice's deliberate disregard and mere recklessness's conscious disregard as a "sliding scale of probabilities," for *conscious* and *deliberate or willful* mean different things. *See* 72 F.4th at 849.

surveying sections of the stadium before the game, throwing the flares, departing the area hurriedly after throwing the flares, moving to another section of the stadium presumably to see the result of the thrown flares, and then putting on a hat and jacket before exiting the stadium. (Doc. 157-1.) The Government argues that this evidence is sufficient because "[t]he natural and probable consequence" of Ramirez's conduct "was that something would get damaged and someone would get hurt." (Doc. 178, pp. 11, 13.) This evidence is certainly sufficient to establish that the flares were intentionally thrown, and that it was reckless to throw lighted flares into a crowded stadium. But this argument improperly conflates mere recklessness with malice, which requires a very high degree of risk not present here. *See Lung'aho*, 72 F.4th at 849. What the video shows is Ramirez's intent *to throw the flares* and his awareness that doing so was against stadium rules, but it does not show his intent *to maliciously damage or destroy* the stadium. *See id.* at 851 ("understanding that the act was likely to harm federal property is what made setting the fire 'malicious'"); *cf.* 18 U.S.C. § 81 (similarly criminalizing "maliciously set[ting] fire to or burn[ing] any building"). Rather, a plethora of evidence shows that Ramirez did not intend to maliciously damage anything. He used flares that self-extinguished within sixty seconds, a choice incongruous with malice. (*See* Doc. 167, Tr. 15:9–25; Doc. 168, Tr. 34:23–36:12; Doc. 172, p. 15.) He was an avid Orlando City fan, strongly suggesting he lacked any motive to

damage their stadium. (Doc. 158-49.) He threw the flares into the Supporters Terrace, a known rowdy part of the stadium where diehard fans dance and sing, indicating celebratory (albeit reckless) intent, not malicious intent. (Doc. 167, Tr. 13:12–19; Doc. 168, Tr. 219:22–25.) Indeed, supporters who are given permission may set off smoke flares (unlike the flares Ramirez used) near that area for celebratory purposes. To be sure, the jury was free to discount the Defendant's proposition that these acts are common in soccer culture, and the notion that this was a misguided choice borne of exuberance. (Doc. 166, Tr. 36:14–25; Doc. 167, Tr. 240:21–241:25.) But eliminating a possible exculpatory explanation does not fill the void of proof required that the act was committed maliciously with the express intent of causing damage to the physical structure of the stadium. When confronted about the incident, Ramirez initially denied involvement—consistent with knowing flares were against the rules—but then clarified that he threw them as part of soccer tradition, not out of intent to hurt anything or anyone. (Doc. 158-35; Doc. 167, Tr. 122:17–124:1.) Whether this purported explanation was credible or not, it stands in contrast to typical arsonists who make a malicious plan to burn things down. *Cf. United States v. Utter*, 97 F.3d 509, 512 (11th Cir. 1996) (evidence sufficient where defendant had motive to burn the property down rather than let the landlord foreclose on it, and he made statements to multiple people that he would burn it down).

On this record, even construing the evidence in the light most favorable to the Government, the jury could only improperly speculate that Ramirez had the necessary malicious intent to damage or destroy the stadium.[2] And speculation is not enough to sustain a conviction for this serious crime. *See Kelly*, 888 F.2d at 740–41; *Hardy*, 895 F.2d at 1335.

At the end of the day, Ramirez is not the malicious federal arsonist § 844(i) was intended to punish. He did not bomb an occupied apartment complex, or burn down a church, or attach an incendiary device to a police car. *Cf. United States v. Grimes*, 142 F.3d 1342, 1345 (11th Cir. 1998); *United States v. Odom*, 252 F.3d 1289, 1292 (11th Cir. 2001); *Belflower v. United States*, 129 F.3d 1459, 1460 (11th Cir. 1997). He threw two short-lived flares into a rowdy area of a concrete stadium, causing scuffmarks and superficial burns that healed in a few days. (*See* Docs. 157-7, 157-11, 157-12, 157-14, 157-17; *see also* Doc. 167, Tr. 171:10–173:1, 198:14–199:10.) Reckless, to be sure. Stupid. A disregard for some risk. But mere reckless stupidity does not a malicious federal arsonist make. This Court is no apologist for arson, and the exercise of prosecutorial discretion is in the purview of the Executive, not the Judiciary. But the crime the prosecutors charged here does not match the evidence. This deeply serious crime — maliciously bombing and burning buildings

---

[2] Because the evidence of intent is insufficient for completed arson, it is necessarily insufficient to prove attempted arson, which requires an even higher *mens rea*. *See* Eleventh Circuit Pattern Instruction S11.

down—carries a corresponding deeply serious mandatory minimum sentence of seven years. *See* 18 U.S.C. § 844(i). And to prove this crime, the Government must "be put to its constitutionally mandated task," because the "doctrine of proof beyond a reasonable doubt, though of ancient vintage, has not yet been discarded." *Pantoja-Soto*, 739 F.2d at 1527. Here, it failed that task. Because the Government presented insufficient evidence of Ramirez's malicious intent,[3] Ramirez's JOA motion must be granted.

The Court now "must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1). The standard on a motion for new trial is more discretionary because "the court need not view the evidence in the light most favorable to the verdict." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985) (cleaned up). Though Ramirez did not directly challenge intent in his request for a new trial (Doc. 173), the Court necessarily concludes for the same reasons that the jury's finding of intent was against the weight of the evidence under this more

---

[3] Under the deferential JOA standard, the Court finds the Government's evidence sufficient on the elements of causation and damage. *See Kelly*, 888 F.2d at 740. Ramirez presented much evidence contesting causation at trial. (Doc. 167, Tr. 18:5–20:2; Doc. 168, Tr. 149:25–195:21.) Reasonable jurors could disagree that causation was satisfied. But viewing the evidence in the light most favorable to the Government, a reasonable juror could have concluded that the evidence establishes causation. *See Kelly*, 888 F.2d at 740.

lenient standard. *See Martinez*, 763 F.2d at 1312. So the request for a new trial is conditionally granted on this ground only.[4]

Accordingly, it is **ORDERED AND ADJUDGED**:

1.   Ramirez's JOA motion (Doc. 172) is **GRANTED**.

2.   The Clerk is **DIRECTED** to enter a judgment acquitting Ramirez.

3.   Ramirez's request for a new trial (*see* Doc. 173) is conditionally **GRANTED IN PART AND DENIED IN PART** as set forth above.

4.   Ramirez's Eighth Amendment motion (Doc. 171) is **DENIED WITHOUT PREJUDICE AS MOOT**.

5.   The United States Marshal is **DIRECTED** to release the Defendant from custody. Any bond or security is released.

6.   The sentencing scheduled for Tuesday, March 31, 2026, is **CANCELED**.

---

[4] The Court rejects Ramirez's challenges to the jury instructions and *de minimis* defense. Because the meaning of damage is within the common understanding of the jury, the Court did not need to define it. *See United States v. Gonzalez*, 940 F.2d 1413, 1427 (11th Cir. 1991); *United States v. Pepe*, 747 F.2d 632, 674 n.78 (11th Cir. 1984). "Damage" is not defined in our pattern, nor any other circuit's. Eleventh Circuit Pattern Instruction O28; *see United States v. Elbeblawy*, 899 F.3d 925, 938 (11th Cir. 2018). And Ramirez was not prejudiced because he extensively contested what damage means throughout trial. (*See* Docs. 159-7 to -34; Doc. 168, Tr. 90:10–121:18.) The Court also did not need to give the requested conscientious acquittal instruction because it is foreclosed by Eleventh Circuit precedent. *See United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983). Finally, the Court remains persuaded by the predecessor judge's analysis denying Ramirez's request to present a *de minimis* defense (Doc. 52) and is within its discretion not to reconsider that ruling. *See United States v. Philpot*, 773 F. App'x 583, 588 (11th Cir. 2019).

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 30, 2026.

ROY B. DALTON, JR.
United States District Judge